Chief Justice Robertson
delivered the opinion of the Court"
This is a suit in chancery, instituted on the 6th of April, 1815, by Nathaniel Hart, and others, as heirs and devisees of Nathaniel Hart,sen. 'deceased, against John Young, and more than forty other persons, to enforce an entry for 4000 acres of land.
The court dismissed the bill on final hearing, in 1826, and the complainants have appealed.
On the 9th of September, 1780, a series of land warrants, issued from the commonwealth of Virginia, to Nathaniel Hart, the decedant;' among which, was one, numbered 6105, for 4000.
In 1728, Nathaniel Hart died. By his will, which was regularly proved and recorded, after some specific legacies to his children, he devised the remainder •of his estate, real and personal, to his widow, duiing life or widowhood, and afterwards to all his children, or to the survivors of them, to be equally ditsribulcd among them. The warrant was embraced by this residuary devise.
Simpson Hart, Susan Shelby, wife of Isaac Shelby, Keziah Thompson, wife of Lawrence Thompson, Mary Ann Dallam,wife of Richard Dallam, China Smith, wife of John Smith, Nathaniel Hart, Cumberland Hart, and Thomas R. G. Hart, were the children of the testator, and survived him, all of them laboring under the disability of coverture or infancy, at his demise.
On the 10th day of December, 1782, the following entry was made in the name of Lawrence Thompson. “Lawrence Thompson, assignee of Thomas Hart, enters 4000 aceres on treasury warrant, No: 6105, adjoining Jeremiah Stark’s entry of 600 acres that is laid on the waters of Licking, adjoining said Stark’s on the east, running with the said line, and N. E» for quantity.
«THOS. MARSHALL,jr. g. f. c.”
*409 Oil this entry, the following assignment appears: ’“I hereby assign my right and title of the within en try, to ttie heirs of Nathaniel Hart, dec, it having been originally assigned to me in a mistake.
•‘‘LAWRENCE THOMPSON.
“May 10, 1798.

Teste.

“Rich’d. S. THOMPSON.
“John Hart.”
On the'5th and 6tb of December, 1804, this entry was surveyed in the name of “the heirs of Nathaniel ■Hart, dec. assignees of Lawrence Thompson, vsho'was as-signee of Thomas Hart.”
On'the 3d day of January,1807, 1000 acres of th^e entry was assigned by one of the executors, Nathaniel Hart, jr. to himself. And on the 15th day of January 1808, a grant issued, “¿o the heirs of Nathaniel Sari, dec.” for 3000 acres, and to Nathaniel Hart, jr. ■for 1000 acres.
This suit is brought in the names of all the children and devisees of Nathaniel Hart dec. except Simpson Hart, and the widow-.
It is admitted, that the appellees all claim by regular derivation, under entries and patents older that) •the entry and patent, exhibited by the appellants.
The principal reason assigned by the circuit court ■for dismissing the bill, is, that the survey was not made in proper time. Various objections, to the right of the appellants, to any relief, have been urged in this court by the counsel for the appellees. Among which, ■the most materia], are the following:
3 st. That there never was any warrant in the name of Thomas Hart, for 4000, acres of land, and that warrant No. 6105, issued to Nathaniel Hart, and is now in the register’s office in Virginia; and therefore, the entry was without authority, and is consequently void.
2d. Thatthe survey was not made in time.
3d. That the warrant never belonged to the appellants, but to Simpson Hart, who was the heir of Nathaniel Hart, and who is" not party to this suit.
*410 4th. That the suit is barred by time.
5ih. That the proper parties are not before the court.
These several objections will be considered in the order,in which they have been stated.
1st. Some of the answers, allege, that the survey* or had no warrant for the entry now claimed by the-appellants. There is no evidence, that any such warrant was ever issued in favor of Thomas Hart or was owned by him. Títere is some positive proof, that, warrant No. 6105, was issued to Nathaniel Hart, sen. for 4000 acres, and that, at the same time, a scrubs of land warrants were procured by him. and in his name, the register of the land oflice of Virginia, has certified a copy of No. 6105, and stated in his certificate, that tbtf original, is in his oflice.
From these facts, the < ounsel for the appellees, infer that the entry, purporting to be on a warrant, as.- igeed by Thomas Hart, was a fraud on the goven meat, and therefore, void, and that.the warrant, in the name of Nathaniel Hart, was never issued, or was exchanged, and therefore, returned to the Virginia office.
There is much plausibility in these deductions, but we are inclined to the. opinion, that the argument, although imposing, is too conclusive to destroy the equity, asserted by the appellants.
1st. The warrant on which the entry was made, is proved to have been issued to Nathaniel, and not to Thomas H ud ; the assignment by Thomas, if he ever did assign if, which is doubtful, did not vitiate any •right resulting from the location.
2d. By tlie act of the Virginia legislature of 1779, for appropriating land in Kentucky, it is declared to he the duty of the holder of a land warrant, when he desired to locate it, to depositit wi'h the proper surveyor, who was required to give him a receipt for it if demanded, and it is also declared, that it shall not be lawful for any surveyor to admit any entry for land without a warrant4 &c.” (See Í. Litiell’s Laws, 410.) By the same (act, p. 412,) it is made'be duly of the surveyor, to deliver to tne “employer,” the original warrant, when he should deliver to him the plat *411 and certificate. It would seem therefore, probable. .in the abstract, that if the original warrant be in the Virginia land office, it was never taken out, or had been exchanged.
But several other considerations oppose this inference.
1st. The entry was made, and by-it, the warrant is described, and identified. It is not probable, that* the surveyor would have permitted the entry, without seeing the-warrant. It is a presumption of law, that he did his-duty. His official acts are to be accredited, until they shall be proved to have been illegal; The return of the warrant to the “employer,” before the survey was made, is not more improbable, than that the surveyor would have made an entry on his books, without any warrant. Indeed it is less probable. After the entry had been made, the surveyor had:no use for the warrant: it was “functus, officio Pie. was directed to give it to the owner, when tie delivered to him, his plat and certificate. If he gave it to him sooner, it could-not be supposed, that injury or. injustice would be the eonsequeuce. The holder could not make another location, and rf he should, he could not perfect the title to both. If there would be danger of fraud, there would be as little, as might be apprehended, from delivering the warrant to the owner or his agent, after the survey had been made. Although, therefore, the surveyor would be guilty of violating a constructive duty, by surrenderingor returning the warrant before the survey had been made, such an indiscretion, would be, as nothing compared with the official stealth, with which he would be chargeable for sanctioning and recording an entry,, without any warrant.
Moreover, it is not proved,, that the warrant is not-in the register’s, office of this state, excepting so far, as the certificate of the Virginia register, may tend to prove it. That certificate is,.however, not very precise, nor perfectly satisfactory: it is far from being cer tain, that the register meant to convey any other idea than that his copy was from the original on record, in his office. This certificate, does not shew, that the warrant had never gone out of . his office, .or had been *412 exchanged. If cither had' been the fact, he might have known it,and knowing it, certainly ought to certified it, and it is probable, that if he could have certified such a fact, the appellees would have availed themselves of it.
But there is another reason tending to discredit the inference that the warrant was never taken out of the office, or was exchanged. By the same act of 1779, I. Litt’s. Laws, 419, the general court is directed to appoint once, or oftener every year, persons to examine and report the condition of the land office;, and “compare all warrants of survey returned to the office executed, with the list of those issued therefrom; and cancel all such as shall appear to have been properly executed, or-exchanged, an account of which, shall be kept by the register, charging- therein those -issued, and giving credit for. those cancelled, & c.”' Now, we must presume that this duty also, was fulfilled, in some mode. How then, does the warrant remain in the office if it had been cancelled? Or why, if it never issued from the office, has not the fact appeared l
These considerations will not allow us to decide that the entry was without the authority of a warrant, or has been revoked' by a subsequent exchange of the warrant; Nothing less than positive and unequivocal proof would justify such a decision, against the presumptions of law and of fact, which have been suggested.
2d, If Lawr. Tbomp-8» had no authority, express or implied, to make the entry, the survey was not made too late. If he obtained the warrant surreptitiously, those who were, entitled to i.t, cannot be prejudiced by his delays, if they, in their own right, were exempt from the operation of the laws requiring surveys to be made within a limited period.
The appellants have proved, disabilities,, which would protect them all from the limitation prescribed for making sui veys, if they had made the entry themselves, or in their owti names.
The important question on “the compact” discussed -in the case of “Hoy’s heirs vs. M‘Murry,” is no.t pro- *413 seated in tbis cuse, if the acts of Thompson should not prejudice the rightful claimants* For, by the laws of Virginia, in force at the dale of the compact, the disabilities proved to have existed until 1804.,, would authorize the survey which was made.
oi claimant, protects all wh" b°jd in'oatrV,tnan survey,
Ifporsoii, "u-ike entry iñ'hís own name, on [eal warrant, and caUon 'inur’ss to them,
This court has frequently derided, that the disability of one joint claimant, will protect all who hold a joint interest in an entry, from the operation of the limitation to the survey. See Wooley vs. Bruce, II. Bibb, 105; Thomas vs. Machir, IV. Bibb, 412.
And if Thompson had authority to make the entry in his own right, whatever might be the proper construction of the compact, the right to make the survey was barred, because he laboured under no disability; and his assignees could not be protected by their own disabilities, exisfiug at, or occurring after the date of the assignment, provided they claim as assignees.
If Thompson had no authority to make the entry in his own name, his doing so was a iraud on those who wore entitled to the warrant, and the benefit of the location wilt inure to them. Currens et al. vs. Hart, Hardin, 37; Clay vs. Smith et al. I. Bibb, 522.
But it is contended, that if they are to he benefit-ted by the entry, they are to take it as Thompson held it; and therefore, should be subject to the limitation which would have barred him. We cannot concur with the counsel in this view of the case. If Thompson urged the assignment to himself and made the entry without authority, expressed or implied, in fact or in law, from the owners of-the warrant, equity considers the location as made by them, and in the.it names; and of course, they are entitled to all the benefits and immunities to which such an entry by themselves would have entitled them. His assignment to them cannot affect the right which they had before, and without the assignment, unless they assert their claim exclusively as assignees; and thereby waive all other'right.
There is no proof that Thompson either had. or had not authority to make the entry in his own name. There are some slight circumstances which might •incline the mind either way on this question. We *414 would not, however, fee] authorized by the record as-llOVV aPPears> io decide that lie mode the ei-try in his own mime, with the assent of Mrs. Horf. who held a life ('state in the warrant, or with the approbation of any other person, entitled to its control or interested in it. The consequence is, that we are indisposed to invalidate the claim of the appellants, for the delay in having the survey made.
Land warrant js valuable seen.’able, ami therefore devisable.
wner of en-v only, may -oscoutesuit chancery, cainst ano (r who has (tent to me land, annot sue itil adversa-pa tent has emnn ' era-tent) ,ue possession or not.
*414 3d. The warrant was a right which was valuable; it was property which was descendable; and thcre-fore, devisable. It was, we think, devised to Mrs. Hart for life, or during widowhood, remainder to alt the children of the testator. All these persons had a[J interest therefore, in the warrant, as devisees, and not as heirs.
The survey was made in the name of “the heirs of Nath’l. Hart;” and the patent issued acco>dingly. But this does'not affect the right of the appellants; at the date of the survey they were both heirs and devisees; and the survey in the names of the ‘‘heirs” will inure to the benefit of the “devisees”. The udescriptio personarum” cannot change the persons nor their right; others may have an interest with them, in the equity which they claim; but this can only affect the question made as to parties; it would not prove that the appellants have no right. It will be shown in another place, that the right is not in the heirs, but in the devisees of N. Hart.
4th. It would not be proper now, (as the case is remanded) to express any opinion on facts, which maybe the subject of future investigation; and therefore,, we shall forbear to decide on the effect of the evidence as to the possession of the appellees.
It is proper, however, to state the general principles which must give effect to possession; as all the persons, who had any right under the warrant, are not shown to have been within the saving of the statute limiting the right of entry. Then-fore, as soon as they had a right to sue for an entry on the land, the limitation commenced.
A person owning an entry only, may prosecute a suit in chancery against another, who has a patent. *415 to the same laná. The suit cannot he brought until ■■the adversary patent had emanated; and it may then he instituted, whether the patentice he m or not. It i^ not the possession, but the acquisition of the legal title, that gives to the person holding the supenor equity the right to sue.
Lappeof20 years, ¡rom date of elder noHjarpniUn chnneery on elder entry, UI|1‘;ss P;>h;n-tec has been inpommm.
Hence, it has been inferred by some of the learned in the law, that the suit in chancery on the entry, may be barred by the lapse of twenty years from the date of the elder patent, whether the elder patentee had ever been in possession or not. This is not our opinion. Until an elder patentee shall have entered adversely, the equitable claimant need not sue him: for until then he had not been disturbed, and could not know that he ever would be. Hr1 may sue sooner; and as soon as an adverse patent shall issue. This , , , . .. . ,, * he may do ‘■'quia timet.” _
The object of such a suit, would he preventive; it would be to prevent the patentee from ever setting up his title, and to compel him to release his prior legal right, to the superior equity of the complainant.
Time alone, should never give title to land, ft is the union of possession and time, that consecrates title, and gives security and repose.
The title of a patentee out of possession, can derive no adventitious merit from the lapse of twenty years. Moris the holder of a mere equity in the same land, always chargeable with laches for not suing the patentee, within 20 years from the date of his patent. Me may never have heard that a patent had issued for the land. He is not bound to know, nor can he be presumed to know, that another person bad obtained from the Commonwealth the legal title to the land which he claims, until the patentee shall enter upon the land, claiming it as his own; nor is he, until then, presumed to know; that the elder legal title will ever be asserted.
If the age of the patent, and not possession,, give to time its legal efficacy, merely because obtaining the parent, occasions a right fo sue the patentee in equity, it would result necessarily from the principle 'of such a doctrine, that 20 years would bar the holder *416 of the equity, although he himself may have had possession.
Limitation to suit in chancery, by owner of elder entry, against elder paten-tee, commences running, with possession of paten-tee, after date flf patent.
If, because the procurement of a patent gives to the holder of an adverse entry, cause for suing, the limitation begins contemporaneously with such cause for suit, although the patentee never took possession ■of the land; then it would necessarily result that although the owner of the adverse entry had been in possession nineteen years, he could not maintain a suit in chancery on his entry, unless he commenced it before the adverse patent bad passed its twentienth year. For it cannot be in any degree material, whether the holder of the mere equity, or of the junior legal title, be in possession or not, if the existence of tne adverse patent, be the cause of action against which the limitation runs.
The limitation cannot commence running, until the adverse patent shall be issued, because a suit cannot be brought on an entry, before such cause of complaint shall occur; nor does that limitation begin even then, unless the patentee be in the actual possession; but will commence running with the possession of the patentee after the date of his patent, or wit!) the date of the patent, if the grantee be then possessed of the land.
6th. Mrs. Hart had an interest in the land warrant; and consequently, had some interest in the entry. It does not appear whether she is dead or alive, or if alive, ever married. As she was entitled, by the will to a life estate, if she were living at the commencement of this suit, she should have been a party,
Simpson Hart, was also entitled to an interest in ■the entry. We do not judicially knoVv whether he was living or not when the bill was filed. If he were then alive he ought to have been a party. 1/ he had died before that time, his heirs or devisees ought to have been made parties.
The will, after making some specific devises, not ■including the warrant in tais case, directed the executors to sell so much of the remainder of the estate of the testator as they should deem it expedient to dispose of, and then devised the residue to the widow and children, as before stated.
*417 None of those nominated as executors ever qualified as such, except Nath’l. Hart, ir; and he did not become quahhed until several years niter the tors death. The warrant, therefore, vested by operation of law, in the oldest sou, Simpson Hart, until tlie entry; whereby (he equity passed -nominally to Thompson, but beneficially to the devisees-, if Thompson had no authority to make the entry in his own name.
The devise (o Mrs. Ha"rt wns “executory;''’ and therefore, she had no vested equity until’the entry was made; nor had she any then, if she allowed the entry to be made with her consent, in Thompson’s right. If the entry vested in her an equity, so far as her right was concerned, the limitation to the making of the survey tan against her; and as the survey was not made until since September, 1798, she, if then alive, was barred, even by .the laws of Kentucky, unless she laboured under a saving disability. But whether she had any available right, could not be ascertained unless she be a party to the suit; and therefore, if she- were alive, she ought to be a party; or if she were, dead, the fact ought to have been shown. If she were living and had an available right, she would he a proper party. If however, she was dead, or had assented to the entry in Thompson’s name, or in any other way waived her equity as.devisee, the other devisees alone, might ’institute suit.
But if they claim as assignees, they Emitid be una-hle, as before stated, to maintain the suit, because then ■they would occupy the place of their assignor, against whom the limitation to surveying, was not suspended.
The appellants had a right to presume, the assignment from Thompson, for the purpose of avoiding any controversy with him; and therefore, that assignment cannot aiFect their pre-existing equity, unless they claim to derive it, or must, in consequence of an authority in Thompson to make the entry as lie did, derive it from him. If Thompson had no such am thority; and if the appellants claim right, not from him, but from the will, the entry in Thompson’s name inured to the use of those who were entitled to it *418 under the will; and the assignment “to-the heirs of Nath’l. Hart” did not change the nature of the equity, nor the right of the devisees; nor did the survey in the' names of Hart’s heirs alter- the equity. This 'did not vest the whole right in Simpson Hart, even if he were then aliye, nor in ail the heirs, as heirs ; nor did it divest Mrs. flart of her equity, if she were then alive, and still retained any. An entry in the names of “the heirs,” must be construed to vest the CqU¡(;y ¡n cievijees, if devisees, and not heirs, were See Hunt vs. Wickliffe, lately decided ... entitled to it. bv the supreme court of the United States.
■ Entry in name of “heirs” con-8tr,,<'<11° ve6^ ’ equity in dc• visees^ if (Jevi-■?eef entitled ’to it.
¿teneral'y, if tenant of par-lie barred, limitation or otherwise, contingent remainder, barred.
The appellants had a right, therefore, to-prosecute •their bill, if they elaiméd as devisees; and had shown either that Mrs. Hart was dead, or had waived or ■ forfeited her equity. But then it would have been .proper that Simpson Hart, ‘•'•the heirn and one of the ' devisees, should have been a party if living, and if dead, his heir's or devisees were necessary parties. For, as the appellants could recover only in their character of devisees, (if they could recover at all;) and as they are not the only devisees, they could not maintain their bill, without making ail who may have an interest,-parties to the suit.
It is a general rule of law, that if the tenant of the particular estate be barred by limitation, or other-wjge acontingent remainder is also barred. Fearue, 465. Sanders, 388, n. g. But the reason of fms rule will not apply to this case. The reason is, that “real estate required livery of seisin; and there must always be a tenant to the principal.” The rule is, therefore, restricted to the freehold, in the transfer-rency of which, livery was necessary. It cannot apply to an inchoate equity, such as that which existed in this case. Therefore, the .limitation against Mrs. Hart, would not extend to the right of the other-devisees, who may claim under the executory devise-.-
For want of proper allegations and parties, the decree of the circuit court should have dismisRechthe bill without prejudice, and not as it did, absolutely.
The onlj question which remains, is, what shall be the mandate? Shall the circuit court be directed to *419 give leave to amend? or shall it he left free to exercise its own discretion? or shall it be peremptorily ordered to dismiss the bill without prejudice? We nre inclined to think that this cuse belongs to that class of cases in which it is proper to order a dismission.
IYpartios entitled, as de-visees, to recover, sue sth heirs, bill should bo dismissed, without prejudice.
Wickliffe and Woolly,• for appellants; Crittenden, Mills, Turner, Maggin and. Triplett, for appellees,
1st. Although the equity of the appellants may be sound; (and. we have said that there is not enough in the record to authorize a decision that it is unsound) nevertheless, much mystery and doubt hangover it, and have ohscured.it in all its stages, t‘ab ovo,” to maturity-
2d. The. appellants assert right, as the heirs ■ of 'Nathaniel Hart, dec. and not as devisees, and they seem to claim as issignees of Thompson, and not in •their own right as devisees. They do. not even intimate iri;their bill, that they- were ever entitled to any intd^est in the entry, as devisees, nor that they claim in that character, [t is the only character in which they' could possibly sustain any claim.
Therefore the bill ought lo be dismissed without prejudice, to a suit, which may be brought in the proper manner.
Wherefore, because the bill was dismissed abso-. lutely, the decree of the-circuit, court is reversed,- and the cause remanded-with instructions to dismiss the bill without prejudice, to any future suit, which may be' brought conformably to the principles of this opinion.
The parties must.respectively pay their own costs ' |n this court.